**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

GENERAL ELECTRIC COMPANY,

*Plaintiff,*

vs.

Case No. 19-2780-EFM-GEB

BOILERMAKER-BLACKSMITH NATIONAL PENSION TRUST,

*Defendant.*

**MEMORANDUM AND ORDER**

Plaintiff General Electric Company ("GE") filed this lawsuit asking the Court to designate and appoint an arbitrator under the Federal Arbitration Act ("FAA") and the Employee Retirement Income Security Act ("ERISA"), as amended by the Multiemployer Pension Plan Amendments Act of 1980 ("MPPAA"). Underlying this case is a dispute between GE and Defendant BoilerMaker-Blacksmith National Pension Trust (the "Fund") regarding whether GE owes the Fund over $200 million in partial withdrawal liability. The MPPAA requires arbitration of this dispute. The parties, however, disagree as to who should serve as arbitrator, thus necessitating the Court's intervention. Currently pending before the Court are the parties' cross motions for judgment on the pleadings (Docs. 15 and 23). Additionally, GE has filed a Motion to Expedite Case Management (Doc. 17) on the basis that it is required to make "interim payments" to the Fund in the amount of $4.5 million per month. As set forth in more detail below, the Court denies GE's Motion for Judgment on the Pleadings and grants the Fund's Cross Motion for Judgment on

the Pleadings. Furthermore, because the Court has issued this Order as expeditiously as possible, it grants GE's Motion to Expedite Case Management.

## I. Factual and Procedural Background

### A. The Underlying Dispute

While this action seeks appointment of an arbitrator, the parties' underlying dispute involves "partial withdrawal liability" under the MPPAA. In 1980, Congress amended ERISA by enacting the MPPAA "to protect the financial solvency of multiemployer pension plans."[1] Under the MPAA, "an employer withdrawing from a multiemployer pension plan [must] pay a fixed and certain debt to the pension plan."[2] This debt is referred to as "withdrawal liability" and is defined as "the employer's proportionate share of the plan's 'unfunded vested benefits,' calculated as the difference between the present value of vested benefits and the current value of the plan's assets."[3]

An employer's withdrawal may be "complete" or "partial."[4] This case involves GE's alleged partial withdrawal from the Fund for the 2014 and 2016 plan years. Partial withdrawal liability may arise "when a contributing employer has not completely withdrawn from the [plan] but has undergone a long term reduction in its contribution base. Partial withdrawal liability is imposed because such a reduction has an adverse effect on the funding of the plan."[5]

For the 2014 plan year, the Fund asserts a claim of "70 percent contribution decline" under 29 U.S.C. § 1385(a)(1). Under this provision, "[t]here is a 70-percent contribution decline for any

---

[1] *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp.*, 522 U.S. 192, 196 (1997).

[2] *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 U.S. 717, 725 (1984).

[3] *Id.* (citing 29 U.S.C. §§ 1381, 1391).

[4] 29 U.S.C. §§ 1383 and 1385.

[5] *Cent. States S.E. & S.W. Pension Fund v. Robinson Cartage Co.*, 55 F.3d 1318, 1321 n.1 (7th Cir. 1995).

plan year if during each plan year in the 3-year testing period the employer's contribution base units [("CBUs")] do not exceed 30 percent of the employer's CBUs for the high base year."[6]

For the 2016 plan year, the Fund asserts a claim involving the "partial cessation of the employer's contribution obligation" under 29 U.S.C. § 1385(a)(2). This claim is based on GE's closing of one of its plants in Tennessee and then shifting the same type of work to other non-union entities in China and Mexico, which do not contribute to the Fund. The Fund alleges that its claim arises under the following provision of 29 U.S.C. § 1385:

> the employer permanently ceases to have an obligation to contribute under one or more but fewer than all collective bargaining agreements under which the employer has been obligated to contribute under the plan but continues to perform work in the jurisdiction of the collective bargaining agreement of the type for which contributions were previously required or *transfers such work to another location or to an entity or entities owned or controlled by the employer*.[7]

GE denies that it is subject to partial withdrawal liability based on the Building and Construction Industry Exemption ("BCI Exemption") set forth in the MPPAA. The BCI Exemption exists for those employers for which "substantially all the employees with respect to whom the employer has an obligation to contribute under the plan perform work in the building and construction industry."[8] In this case, the parties dispute how the phrase "substantially all employees" should be construed. GE contends that this should be determined by an employee headcount method, while the Fund asserts that it must be determined by measuring CBUs. The

[6] 29 U.S.C. § 1385(b)(1)(A). The term "3-year testing period" is defined as "the period consisting of the plan year and the immediately preceding 2 plan years." *Id*. § 1385(b)(1)(B)(i). The number of CBUs for the high base year "is the average number of such units for the 2 plan years for which the employer's [CBUs] were the highest within the 5 plan years immediately preceding the beginning of the 3-year testing period." *Id*. § 1385(b)(1)(B)(ii).

[7] *Id*. § 1385(b)(2)(A)(i) (emphasis added).

[8] *Id*. § 1383(b)(1)(A).

parties also dispute how the provision "building and construction industry" should be interpreted and applied.

**B. The Dispute Before the Court**

On March 14, 2019, the Fund served a demand on GE under 29 U.S.C. § 1399(b) alleging that GE must pay $204,887,883 in partial withdrawal liability. The demand set forth a payment schedule consisting of either a lump sum payment of the full assessment amount or 52 monthly payments of $4.5 million and a final payment of approximately $113,000. GE has made and continues to make the $4.5 million monthly payments, also known as "interim payments," pursuant to the "pay now dispute later" rule under the MPPAA.[9]

Pursuant to the MPPAA's dispute resolution requirements, on June 12, 2019, GE served a Request for Review on the Fund objecting to the Fund's demand and requesting that it withdraw the withdrawal liability assessment. GE claimed that the Fund's assessment was erroneous for four reasons and "reserve[d] all rights, including the right to raise additional issues, facts and arguments at a later time." The four reasons asserted by GE are: (1) the Fund's demand was not timely because it was not made "as soon as practicable" as required by the MPPAA; (2) GE is subject to the BCI Exemption and thus is not liable; (3) even if the BCI Exemption is not applicable, in the 2014 assessment, the Fund used the wrong data to measure CBUs; and (4) even if the BCI exemption is not applicable, the Fund's 2016 assessment premised on the closure of the

[9] Even if an employer challenges the pension fund's withdrawal liability determination, the employer "still must pay according to the [fund's] schedule in the interim under the statute's 'pay now, dispute later' collection procedure." *Bay Area Laundry*, 522 U.S. at 197 (citation omitted). If, as a result of a favorable arbitration decision, an employer has overpaid any amount of withdrawal liability by complying with the pension fund's payment schedule, the employer is entitled to a lump-sum refund of the entire overpayment plus interest. 29 C.F.R. § 4219.31(d); *Debreceni v. Merchants Terminal Corp*., 889 F.2d 1, 2 (1st Cir. 1989) (citing 29 U.S.C. § 1401(d)).

Tennessee facility is incorrect. The Fund issued a Response to the Request for Review on October 16, 2019. The Response considered and rejected all of GE's arguments.

Just a few days before the Fund issued its Response, on October 11, GE demanded arbitration of the dispute under the MPPAA and the Pension Benefit Guaranty Corporation ("PBGC") regulations. GE advised that it was "iniat[ing] arbitration to resolve all issues in connection with the assessment, including but not limited to," the four issues "set forth in its June 12, 2019 request for review" as well as other unspecified "additional defenses at law or in equity to the Assessment, including the propriety of the calculation of the assessment." Because the Fund has not adopted any rules governing selection of an arbitrator for partial withdrawal liability disputes, the parties negotiated to mutually select an arbitrator, reserving the right to seek court intervention under the FAA if they could not agree.

On November 11, 2019, GE sent a letter proposing the following three former federal judges serve as arbitrator of the dispute:

- Geraldine Brown, who served as Magistrate Judge in the U.S. District Court for the Northern District of Illinois from 2000 to 2016. She is currently an arbitrator with Judicial Arbitration and Mediation Services, Inc. ("JAMS"), based in Chicago, Illinois.

- Gerald E. Rosen, who served as a District Judge for the U.S. District Court for the Eastern District of Michigan from 1990 to 2017 (including as Chief Judge from 2009 to 2015). He is currently an arbitrator with JAMS, based in Detroit, Michigan.

- Deanell R. Tacha, who served as a Circuit Judge on the U.S. Court of Appeals for the Tenth Circuit from 1985 until 2011 (including as Chief Judge from 2001 to 2008). She is currently an arbitrator with JAMS, based in St. Louis, Missouri, although she resides in Kansas.

Additionally, GE's letter informed the Fund that it had already approached these individuals to determine their interest and availability for the appointment and had sent them a series of questions

to answer regarding their experience and interest. GE stated that before sending these questions to the judges, it discussed them with JAMS General Counsel.

Prior to receiving this letter, the Fund was not aware that GE was contacting and having discussions with potential arbitrators or JAMS General Counsel. Although GE and the Fund previously discussed the arbitrator selection process, nothing in these discussions suggested that the process would involve ex parte interviews without notice, involvement, or consent from the other party. Upon learning of these ex parte interviews, the Fund's counsel promptly emailed GE's counsel demanding a list of all the potential arbitrators (including but not limited to those GE already identified) whom GE's counsel approached regarding this matter, the questions that GE's counsel asked them, and all notes relating to GE counsel's communications with them. GE responded the next day stating that it would not provide the requested material as to those individuals it was not proposing as arbitrator because it was attorney work product and not relevant to the Fund's evaluation of GE's proposed candidates. GE's counsel did agree, however, to provide the questions and responses it received from the proposed candidates. On November 14, GE's counsel forwarded four memos regarding the proposed candidates to the Fund's counsel. The Fund alleges that these documents were formatted and edited by GE after the conversations occurred, and they contain no record as to how GE described the legal and factual background issues in the case to the potential candidates or JAMS General Counsel.

On November 22, the Fund formally responded to GE's list of proposed arbitrators. The Fund objected to each candidate not only because of GE's ex parte interviews but because of their lack of expertise in the field of withdrawal liability. In return, the Fund proposed four arbitrators who specialize in withdrawal liability. The parties then jointly developed a written questionnaire for submission to all potential arbitrators, requesting their resumes and seeking information about,

for example: experience with withdrawal liability disputes and disputes involving the BCI Exemption; procedures and timing for dispositive motions, hearings, and final decisions; and experience with the parties and their counsel.

After the parties had a chance to review the responses to the joint questionnaires, they had a "meet and confer" telephone conference on December 20, 2019. GE continued to assert that Judge Brown, Judge Rose, or Judge Tacha would be the best arbitrator based on their responses to the joint questionnaires. In their responses, Judge Brown stated that she handled "a lot" of "withdrawal liability cases" in the context of seeking to mediate settlement of such claims and she "remember[s] the general legal framework behind withdrawal liability[;]" Judge Rosen stated that he "heard multiemployer plan cases[;]" and Judge Tacha "of course hear[d] many ERISA cases." The Fund, on the other hand, asserted that one of its three candidates, who have expertise in ERISA liability, would be a better arbitrator. These individuals are described by the Fund as follows:

- Norman Brand who has been a full-time arbitrator since 1983 and is a member of the American Arbitration Association's MPPAA withdrawal liability panel. He has arbitrated and mediated almost 4,000 labor, employment, pension, or other cases, including arbitration in approximately 80 withdrawal liability cases. Of his 80 or so withdrawal liability cases, approximately 20 involved claims for partial withdrawal liability, approximately 25 involved the BCI Exemption, and approximately two-thirds involved actuarial issues.

- Jack Clarke who has been a full-time arbitrator since 1981 and is a member of the American Arbitration Association's MPPAA withdrawal liability panel. He has arbitrated a total of 35 withdrawal liability disputes. Of those 35 cases, five involved actuarial issues, three involved partial withdrawal liability claims, three involved the BCI Exemption, and 11 went to decision and/or award.

- Richard C. McNeill, Jr. who has been a full-time arbitrator since 2009 and is a member of the American Arbitration Association's MPPAA withdrawal liability panel. Before he was an arbitrator, he represented Taft-Hartley employee benefit plans (like the Fund) for more than 20 years in all respects, including, among other things, representing them in withdrawal liability arbitrations. While in private practice he was also involved in approximately 2,000 labor arbitrations, representing both unions and management. Since becoming full time arbitrator he

has handled three withdrawal liability arbitrations. All three involved actuarial issues, and one involved the BCI Exemption.

After the meeting, the parties agreed that their negotiations over selection of an arbitrator had reached an impasse. On December 26, 2019, GE filed this suit asking the Court to intervene and appoint Judge Brown, Judge Rosen, or Judge Tacha as the arbitrator. On January 31, 2020, the Fund filed its Answer and Counterclaim requesting that the Court appoint Brand, Clark, or McNeill as the arbitrator. GE subsequently filed a Motion for Judgment on the Pleadings and a Motion to Stay Rule 26 Proceedings and to Expedite Case Management. The Fund then filed a Cross Motion for Judgment on the Pleadings. On February 13, 2020, the Court granted GE's unopposed Motion to Stay Rule 26 proceedings. However, the Court reserved ruling on GE's request to expedite the proceedings. Therefore, all three of the parties' motions are pending before the Court and are ripe for determination.

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(c), a party may move for judgment on the pleadings after the pleadings are closed as long as the motion is made early enough not to delay trial. The standard for dismissal under Rule 12(c) is the same as a dismissal under Rule 12(b)(6).[10] To survive a motion for judgment on the pleadings, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level," and must contain "enough facts to state a claim to relief that is plausible on its face."[11] All reasonable inferences from the pleadings are granted in favor of the non-moving party.[12] Judgment on the pleadings is

[10] *Myers v. Koopman*, 738 F.3d 1190, 1193 (10th Cir. 2013).

[11] *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007).

[12] *Sanders v. Mountain Am. Fed. Credit Union*, 689 F.3d 1138, 1141 (10th Cir. 2012) (citation omitted).

appropriate when "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law."[13] Documents attached to the pleadings as exhibits may be considered in deciding a Rule 12(c) motion.[14]

## III. Analysis

### A. The Parties' Cross Motions for Summary Judgment

#### *1. The Court's Authority to Appoint an Arbitrator*

Under § 5 of the FAA, the Court has the authority and duty to appoint an arbitrator in this case.[15] "Congress sought, in enacting § 5, to cure indefinite delay in arbitration proceedings based on disagreement over the appointment of arbitrators by providing parties with access to a neutral forum to correct such failures."[16]

The PBGC regulations provide that the parties "shall" select an arbitrator "within 45 days after the arbitration is initiated" by an arbitration demand.[17] If, however, the parties "fail to select an arbitrator" within 45 days, "either party" may "seek the designation and appointment of an arbitrator in a United States district court pursuant to the provisions of [the FAA]."[18] Furthermore, § 5 of the FAA states that the court "shall designate and appoint an arbitrator" when (1) no

---

[13] *Id*. (quotations marks and citation omitted).

[14] *Park Univ. Enters., Inc. v. Am. Cas. Co*., 442 F.3d 1239, 1244 (10th Cir. 2006), abrogated on other grounds by *Magnus, Inc. v. Diamond State Ins. Co*., 545 F. App'x 750, 753 (10th Cir. 2013).

[15] *See, e.g., Beltran v. AuPairCare, Inc*., 907 F.3d 1240, 1263 (10th Cir. 2018) (stating that § 5 of the FAA is the "default method for appointing an arbitrator" in absence of agreement); *Evangelical Lutheran Good Samaritan Soc'y v. Moreno*, 2019 WL 999736, at *7 (D.N.M. Feb. 28, 2019) ("[P]ursuant to the FAA's § 5, the Court has authority to appoint an arbitrator.").

[16] *BP Expl. Libya Ltd. v. ExxonMobil Libya Ltd*., 689 F.3d 481, 493-94 (5th Cir. 2012).

[17] 29 C.F.R. § 4221.4(a); *see* 29 U.S.C. § 1401(a)(2).

[18] 29 C.F.R. § 4221.4(e).

agreement specifies an appointment method, (2) a "lapse in the naming of an arbitrator" has occurred, and (3) "either party to the controversy" has sought court intervention.[19]

Here, all three elements of § 5 are satisfied. There is no agreement specifying the arbitrator selection process; the parties cannot agree as to whom should be the arbitrator; and GE has filed this lawsuit asking the Court to appoint an arbitrator under the FAA and the PBGC regulations. Accordingly, the Court may appoint an arbitrator to resolve whether GE is subject to partial withdrawal liability.

*2. Selection of Arbitrator*

GE asks the Court to select one of three former federal judges to serve as arbitrator in this case, whereas the Fund asks the Court to select one of three arbitrators with experience in MPPAA withdrawal liability. The parties generally agree that the Court should look at the candidates' qualifications and impartiality when making this determination. As explained in more detail below, the Court concludes that the Fund's candidates have preferable qualifications to resolve the underlying dispute in this case and will preside impartially over the dispute.

a. Qualifications

GE argues that its candidates are more qualified than the Fund's candidates because the primary issue in dispute is one of statutory interpretation—the application of the BCI Exemption. According to GE, there is no better individual to interpret this exemption than a retired federal judge who spent years on the bench interpreting federal statutory schemes. GE also argues that two of the Fund's candidates—Clarke and McNeill—do not have materially more expertise applying the BCI Exemption than its candidates do.

[19] 9 U.S.C. § 5; *Evangelical Lutheran*, 2019 WL 999736, at *7-9.

The Fund argues that its candidates are more qualified to resolve the underlying dispute because of their expertise in withdrawal liability. In addition, it argues that the BCI Exemption is the not only issue the arbitrator will be required to resolve. The Fund further asserts that the MPPAA contemplates that subject matter experts would rule at this stage of the proceeding and that the parties could subsequently appeal that decision to the United States District Court, where a federal judge would review the decision. The Fund dismisses GE's argument that its candidates do not have materially more expertise than GE's candidates on the issue of withdrawal liability.

The Court has no doubt that Judges Brown, Rosen, and Tacha are adept at interpreting federal statutory schemes. But the Court is not convinced that the underlying dispute should be arbitrated by one of them on that basis alone. Contrary to GE's assertion, the underlying dispute in this case is not limited to the interpretation of the BCI Exemption. GE identified three other issues besides the BCI Exemption in its Request for Reconsideration and reserved the right to raise even more issues, including challenges to the reasonableness of the actuary assumptions made by the Fund.

For example, if the arbitrator finds that the BCI Exemption is not applicable, then the arbitrator must address whether GE partially withdrew from the fund in 2014 (by a 70% decline in CBUs) and in 2016 (by transferring work from its Tennessee facility to non-union facilities it owned or controlled).[20] As to the 2014 claim, the parties dispute whether the Fund used the correct CBUs to calculate the contribution decline for the 2014 plan year. As to the 2016 claim, the arbitrator must at least resolve the legal question of what it means to "transfer[] such work to another location or to an entity or entities owned or controlled by the employer" under 29 U.S.C.

[20] 29 U.S.C. §§ 1385(b)(1)(A), (b)(2)(A)(i).

§ 1385(b)(2)(A)(i)[21] An arbitrator must be fully prepared and capable to resolve all the issues in the case. Thus, the Court finds that the Fund's candidates, with their experience in withdrawal liability, are better suited to resolve these issues, and any others that the parties may raise, in the first instance. Indeed, courts have recognized that "arbitrators chosen to resolve the complicated issue of withdrawal liability often have relevant expertise in the field of pension law which can contribute significantly to the accuracy of a decision."[22]

Furthermore, GE's argument is premised on the incorrect notion that there will be no factual issues for the arbitrator to resolve if the BCI Exemption is the only issue in dispute. "After all, only in unusual [withdrawal liability] cases are there apt to be *no* disputed facts."[23] One court has stated, "whether an employer's defense is a question of fact, or of law, or a mixed question of fact and law, is often difficult to discern," but the determination "should not be left for the employer itself to decide in the first instance."[24] To satisfy the BCI exemption, GE must prove, in part, that its employees worked in the building and construction industry.[25] This is a factual determination that the arbitrator will be required to make.

---

[21] 29 U.S.C. § 1385(b)(2)(A)(i).

[22] *Sherwin-Williams Co. v. N.Y. State Teamsters Conference Pension, Retir. Fund*, 158 F.3d 387, 393 (6th Cir. 1998); *see also Bd. of Tr. of Trucking Employees of North Jersey Welfare Fund, Inc. v. Centra*, 983 F.2d 495, 506 (3d Cir. 1992) ("By generally mandating arbitration in the first instance with review by a federal court, MPPAA has created arbitrators who are experts in applying the technical provisions of how and when to assess withdrawal liability.").

[23] *I.A.M. Nat'l Pension Fund, Plan A, A Benefits v. Clinton Engines Corp.*, 825 F.2d 415, 422 (D.C. Cir. 1987); *see also Coles Exp. v. New England Teamsters and Trucking Indus. Pension Fund*, 702 F. Supp. 355, 363 (D. Maine 1988) ("[P]ure issues of statutory interpretation are rare in ERISA cases.").

[24] *Flying Tiger Line v. Teamsters Pension Trust Fund of Philadelphia*, 830 F.2d 1241, 1255 (3d Cir. 1987) (quoting *Robbins v. Chipman Trucking*, 693 F. Supp. 628, 638 (N.D. Ill. 1986)).

[25] 29 U.S.C. § 1383(b)(1)(A).

The Court is also not persuaded by GE's attempt to discredit the qualifications of the Fund's candidates. Like GE's candidates, the Fund's candidates are adept at statutory construction. Brand and Clarke have been full time arbitrators since the early 1980s. McNeill has been an arbitrator since 2009, and before that was in private practice for over 20 years representing unions and management in labor arbitrations. Each of these proposed arbitrators has been involved in thousands of arbitrations arising under federal law, and thus, have significant experience interpreting federal statutory schemes.[26]

GE argues that Clarke and McNeill do not have any more experience regarding withdrawal liability than its candidates do. It points out that McNeill has only arbitrated three withdrawal liability disputes, none of which involved partial withdrawal liability, and that Clarke has arbitrated only three partial withdrawal liability disputes and three involving the BCI Exemption. This argument ignores the fact that the Fund has proposed three candidates, not just McNeill and Clarke, to serve as arbitrator. The Fund's third candidate—Brand—has arbitrated 20 claims for partial withdrawal liability and 25 claims involving the BCI Exemption. GE is free to choose Brand to serve as the arbitrator in this case if it does not feel that Clarke and McNeill have enough experience.[27]

---

[26] *See, e.g.*, *Sherwin-Williams*, 158 F.3d at 393 (stating that "deference to the findings of the arbitrator is proper because the arbitrators chosen to resolve the complicated issue of withdrawal liability often have relevant expertise in the field of pension law which can contribute significantly to the accuracy of a decision.").

[27] GE argues that Brand's calendar prevents him from being able to arbitrate this case in an expeditious manner because he has no days available in May and only four days available in June, which is when GE would expect to receive rulings on dispositive motions. GE made this argument without taking into consideration that the Fund would also file a motion for judgment on the pleadings, and thus, its predicted time frame as to when the arbitration proceedings would begin is inaccurate. The Court is not privy to Brand's calendar, but it is not persuaded by GE's evidence that Brand is too busy to arbitrate the case.

In any event, Clarke and McNeill have significantly more experience in interpreting and applying ERISA's withdrawal liability provisions than GE's candidates do. Both Clarke and McNeill are on the American Arbitration Association's withdrawal liability panel. Clarke has presided over 35 withdrawal liability disputes, and McNeill has presided over three. GE's candidates, on the other hand, have never arbitrated a single withdrawal liability dispute. They have issued orders and opinions on ERISA disputes and remember "the general legal framework behind withdrawal liability," but this does not give them the same level of knowledge and expertise in labor and pension law that the Fund's candidates have acquired. Furthermore, while the Court is confident that GE's candidates have the intellectual capability to familiarize themselves with the withdrawal liability issues in dispute, the time it will take them to do so will increase the overall cost to the parties and lengthen the time required for resolution.

Overall, the Court finds that the Fund's arbitrators are better qualified to resolve the underlying dispute. The nature of the underlying case is not simply one of statutory construction. It potentially will require both factual and legal determinations of several MPPAA provisions. These issues require "the special knowledge and expertise of a skilled labor and pension law arbitrator" who "can assess non-recurring, fact-specific issues not only efficiently but realistically."[28] Therefore, the parties' interests would be better served by having an individual with experience in withdrawal liability arbitrate the case.

[28] *Chicago Truck Drivers Pension Fund v. Louis Zahn Drug Co.*, 890 F.2d 1405, 1411 (7th Cir. 1989) (citation omitted).

b. Impartiality

"[I]n exercising its appointment authority under § 5," the Court "must . . . pay heed to the principle that each party should be treated fairly, if not equally, in the appointment process."[29] GE asserts that the Court should pick its candidates because there is no doubt that, as formal federal judges, they will serve impartially. It also asserts that the Fund's candidates are potentially biased because they have a "subconscious incentive" to rule in favor of pension funds. Specifically, GE asserts that it has "significant" concerns about the impartiality of Brand and McNeill.

In response, the Fund argues that its arbitrators are not inherently biased. It asserts that GE's arguments are simply pretext for its ex parte contacts with its proposed arbitrators—the full extent of such communications GE never disclosed to the Fund. The Fund complains if the Court appoints one of the federal judges, the Fund would be required to object to the ex parte communications and thus risk offending the arbitrator and prolonging the proceedings.

GE's concern that withdrawal liability arbitrators are inherently biased is pure speculation. According to GE, pension funds are "repeat customers" for arbitrators because, unlike employers who can only withdraw from a fund once, pension funds can continue to assert withdrawal liability claims against other contributing employers. GE argues that an arbitrator wanting to build his or her customer base thus has a subconscious incentive to rule in favor of the pension fund. GE, however, points to no authority or facts in support of this argument. Moreover, it ignores the fact that Brand and other withdrawal liability arbitrators with significant experience have ruled against such pension funds in the past.[30]

---

[29] *BP Expl. Libya, Ltd. v. ExxonMobil Libya, Ltd.*, 689 F.3d 481, 495 (5th Cir. 2012).

[30] *See, e.g.*, *EUSA-Allied Acquisition Corp. v. Teamsters Pension Trust Fund*, 2013 WL 3930088, at *1-*2 (D.N.J. 2013) (pension fund moved to vacate award issued by arbitrator Brand); *Steven Engineers & Contractors, Inc.*

GE's concerns of bias regarding Brand and McNeill are meritless as well. GE argues that Brand should have disclosed his prior awards involving disputes between other parties even though Brand did not have authority to disclose these awards. According to GE, without this information, it will be impossible for it to determine whether Brand favors pension funds in his awards. GE bases its argument on a PBGC regulation stating that "the plan sponsor shall make copies [of final awards] available upon request to the PBGC and to all companies that contribute to the plan."[31] This regulation, however, applies to the plan sponsor, not the arbitrator. Nothing in it requires arbitrators to disclose prior awards to third parties.

As to McNeill, GE argues that McNeill should be disqualified because he represented pension funds before becoming an arbitrator over 10 years ago. GE, however, does not point to any current ties between McNeill and his past clients that would lead the Court to believe he was biased. Furthermore, the Undersigned is aware from personal experience that representing a client or certain type of client in the past does not result in always ruling in favor of that client in the future.

Overall, the Fund's candidates are not inherently biased, and their past experiences do not prevent them from acting as a neutral arbitrator in the underlying dispute. Furthermore, the Court is not convinced that GE's candidates would be any more impartial simply because they are former federal judges. Rather, the Court is slightly concerned about GE's ex parte communications with these judges during the parties' negotiations on selecting an arbitrator. Should the Court pick GE's candidates, there would always be a shadow of doubt over the impartiality of the proceedings.

---

*v. Iron Workers Local 17 Pension Fund*, 2016 WL 4479486, *2 at n.3 (N.D. Ohio 2016) (pension fund moved to vacate award issued by arbitrator with experience comparable to the Fund's proposed arbitrators).

[31] 29 C.F.R. § 4221.8(g).

*3. Conclusion*

In sum, the Court concludes that one of the Fund's candidates should arbitrate this dispute. The Court is not convinced that the parties' underlying dispute is as simplistic as GE portrays it to be. There are potentially three complex MPPAA issues in dispute, and an arbitrator with experience in withdrawal liability and the overall MPPAA framework is more qualified to resolve them. Furthermore, the Court does not find the Fund's candidates to be biased, whereas GE's ex parte communications with its proposed candidates would cast a cloud of unfairness over the arbitration of the case. The Court therefore appoints one of the Fund's candidates to serve as arbitrator in this case. The parties have 21 days to mutually select Brand, Clarke, or McNeill as arbitrator and inform the Court of their decision. If they are unable to reach an agreement, the Court will pick an arbitrator for them.

**B. Motion to Expedite Proceedings**

GE asks this Court to expedite the management of this case on the basis that is required to make interim payments in the amount of $4.5 million per month while it is challenging the underlying liability assessment. GE acknowledges that it will be able to recoup this money plus interest if it prevails in the arbitration (or in court upon judicial review of the arbitration award) but argues that the cash flow imposes a burden on GE's operations and warrants expedited attention. The Court granted GE's motion as to the Rule 26 proceedings on February 13, 2020. Because the Court has reviewed and issued an Order regarding the parties' cross motions for summary judgment much more expeditiously than it normally it would, the Court also grants GE's motion to expedite case management.

**IT IS THEREFORE ORDERED** that GE's Motion for Judgment on the Pleadings (Doc. 15) is **DENIED**.

**IT IS FURTHER ORDERED** that the Fund's Cross-Motion for Judgment on the Pleadings (Doc. 23) is **GRANTED**. The parties have 21 days from the date of this Order to mutually select Brand, Clarke, or McNeill as arbitrator in this case. Should the parties fail to reach an agreement, the Court will select an arbitrator from these three individuals for them. The parties must notify the Court of their choice of arbitrator, or lack thereof, by filing a joint status report on the docket.

**IT IS FURTHER ORDERED** that GE's Motion to Expedite Case Management (Doc. 17) is **GRANTED**.

**IT IS SO ORDERED**.

Dated this 5th day of May, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE