**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| GENERAL ELECTRIC COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 2:19-cv-2780-EFM-GEB |
| v. | ) | |
| | ) | |
| BOILERMAKER-BLACKSMITH | ) | |
| NATIONAL PENSION TRUST, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S STATUS REPORT ON SELECTION OF ARBITRATOR**

Pursuant to the Court's Order dated May 5, 2020, Defendant Boilermaker-Blacksmith

National Pension Trust (the "Fund") files this Status Report on Selection of Arbitrator:

**<u>INTRODUCTION</u>**

Having dragged its feet for weeks in responding to the Fund's request that it confer

regarding the selection of an arbitrator pursuant to the Court's Memorandum and Order dated

May 5, 2020, (Doc. 27, "Order"), on May 21, 2020 GE finally provided the Fund with its preferred

candidate of the three that the Fund had proposed to the Court, Jack Clarke.  However,

completely ignoring the Court's instruction that the parties' mutually select an arbitrator from

those three, GE took the position that it alone had the prerogative to select one of those

arbitrators and the Fund had no choice other than to acquiesce to its selection.

Because the Fund refused to allow GE to make the selection unilaterally, and because

the Fund wants this $205 million dispute arbitrated by the individual with the most experience

(Norman Brand), the Fund reluctantly came to the conclusion that the parties were, once again,

at an impasse and that the Court would have to select an arbitrator for this matter.  Accordingly,

the Fund prepared a joint status report informing the Court of the same as directed by the

Court's Order and forwarded it to GE's counsel for review.  Unfortunately, GE would not even

agree to that, demanding instead that any status report set forth a "summary" by each party and

a request for additional briefing on the arbitrators.  The Fund did not think such a summary was necessary or even permitted under the Court's Order, which only instructed the parties to "notify the Court of their choice of arbitrator, or lack thereof."  The Fund advised GE of this, but GE disagreed and proceeded to file its own status report over the Memorial Day Holiday weekend, without even sharing it with the Fund prior to filing.  The Fund now, reluctantly, files its own status report in response.

## **BACKGROUND**

As the Court is aware, the parties were initially unable to agree on an arbitrator to hear this withdrawal liability case, which led to an action being filed with the Court asking it to select an arbitrator.  Following cross motions for judgment on the pleadings, this Court entered the Order, which denied GE's motion, granted the Fund's motion, and directed the parties to, within 21 days of the order, mutually select one of the Fund's three proposed arbitrators – Brand, Clarke or McNeill – to serve as the arbitrator in this case.  (Doc. 27 at 18).  The Court further ordered that should the parties fail to reach an agreement on one of those three arbitrators, they were to notify the Court and it would select one of those three individuals to serve as the arbitrator.  (*Id.*).

A few days later, on May 8, 2020, Fund counsel reached out to GE counsel asking for their thoughts on the selection of one of those three individuals to be the arbitrator, and, once agreed upon, the process for reaching out to that arbitrator.  (Ex. 1, Leah Email Dated May 8, 2020).

On May 9, 2020, GE counsel responded that it would "soon" be responding with GE's views on the Fund's list of arbitrators.  (*Id.*).

Although the deadline for the parties to select an arbitrator was May 26, 2020, GE counsel had still not responded to Fund counsel by May 20, 2020.  Therefore, on that date,

Fund counsel again contacted GE counsel pointing out that the parties were now down to only a few days to select an arbitrator.  (Ex. 2, Leah Email Dated May 20, 2020).

Later that same day, GE counsel finally responded.  But rather than providing insight as to the three arbitrators so that the parties could mutually select the arbitrator, he claimed, for the first time, that it was GE's understanding that the Fund would simply concur with whomever GE unilaterally selected.  (Doc. 28-1 at 2, Miller Email Dated May 20, 2020).

That, of course, was not what this Court ordered when it directed the parties to "mutually select" an arbitrator from the Fund's list.  (Doc. 27 at 18).  Thus, Fund counsel responded the next day by pointing this out and also quoting from its prior email, which could not be reasonably construed as indicating that the Fund would allow GE to select the arbitrator unilaterally, as GE suddenly claimed it was entitled to do.  Instead, Fund counsel noted that the Fund has "invited [GE] several times to let us know and [has] indicated a willingness to work with [GE] to try to come to an agreement."  (Doc. 28-2 at 3, Leah Email Dated May 21, 2020).  At the same time, however, Fund counsel informed GE counsel that the Fund, not surprisingly, had its own order of preference among the three arbitrators.  (*Id.*).

GE counsel responded that day by agreeing that the selection must be mutual per the Court's Order, but then contradicted himself by claiming that, because the list of three were the Fund's proposed arbitrators, the Fund was bound to agree to whomever GE proposes. (Doc. 28-2 at 2, Miller Email Dated May 21, 2020).  GE counsel then had the temerity to accuse Fund counsel of "gamesmanship" because the Fund had preferences among the three arbitrators.  (*Id.*). GE justified its position by pointing to the following portion of the Court's Order that rejected one of GE's core arguments:  "GE is free to choose Brand to serve as the arbitrator in this case if it does not feel that Clarke and McNeill have enough experience."  (Doc. 27 at 13). According to GE, the Court was implying in this adverse finding that the selection of arbitrator

from the Fund's list was to be made by GE and GE alone, notwithstanding the language at the end of the Order unequivocally stating otherwise.

In the same email, GE counsel advised that, contrary to GE's previous claims regarding his lack of experience, GE's preference is Jack Clarke.  GE also repeated its objections to Arbitrator Brand, which the Court already found meritless, *i.e.*, that Mr. Brand is too busy to hear the case and he had not provided copies of his prior arbitration awards (including the award, if any, in the one prior arbitration that he had with Tucker Arensberg).

Fund counsel responded that same day by indicating that Arbitrator Brand is the Fund's preference, as he had by far the most experience of the three arbitrators – as the Court recognized in its Order – and that, given the large amount of money at stake (over $200 million), it would be appropriate for the case to be heard by the most experienced arbitrator.  (Doc. 28–2 at 1, Leah Email Dated May 21, 2020).  Fund counsel also put to rest GE's demand for a copy of any final award issued by Arbitrator Brand in the prior arbitration that Tucker Arensberg had with him by informing GE counsel that there was no such award in that matter because the case settled prior to hearing.

Because it was apparent that the parties were at an impasse, Fund counsel also provided GE counsel with a draft joint status report, which would inform the Court that after 21 days the parties were unable to agree to an arbitrator.  But GE counsel would not even agree to that, instead taking the position that the joint status report should go further by summarizing the parties' positions and including a joint request for more briefing on the arbitrator selection.  (Doc. 28–1 at 2–3, Miller Email Dated May 21, 2020).  The Fund would not agree to that, however, given that the Order clearly did not provide for the parties to include such unsolicited information.  Thus, GE filed its own status report, in which it advocates for the selection of Arbitrator Clarke.  The Fund now files its own status report, in which the Fund advocates for selection of Arbitrator Brand.

## DISCUSSION

Although GE is correct that Arbitrator Clarke was on the Fund's list of three candidates in the Fund's counterclaim and cross-motion for judgment on the pleadings, GE has no basis to fault the Fund for having a preference among those three individuals.  GE's assertion that it now solely has the right to pick the arbitrator is contrary to the Court's Order, which expressly and unambiguously directs "[t]he parties . . . to mutually select Brand, Clarke, or McNeill as arbitrator in this case" and to "notify the Court of their choice of arbitrator, or lack thereof."  (Doc. 27 at 18) (emphasis added).  The Fund is at a loss for how GE can now claim, based on a cherry-picked excerpt from a different portion of the Court's Order, that the choice is GE's alone.

The Fund is not insisting on Arbitrator Brand simply for the sake of being difficult.  To the contrary, the Fund firmly believes that the most experienced arbitrator on the Fund's list should hear this case, which has over $200 million at stake, and which will involve complicated legal and factual issues.  As this Court noted in its May 5, 2020 opinion:

> An arbitrator must be fully prepared and capable to resolve all the issues in the case.  Thus, the Court finds that the Fund's candidates, with their experience in withdrawal liability, are better suited to resolve these issue, and any others that the parties may raise, in the first instance.

(Doc. 27 at 12).  This is because this case requires the "special knowledge and expertise of a skilled labor and pension law arbitrator" who can "assess non-recurring, fact-specific issues not only efficiently but realistically."  (*Id.* at 14).  Given that, it makes sense that the most experienced of any of the three remaining arbitrators, should be selected.

While the Court was correct in finding that all of the Fund's proposed arbitrators had more experience in this area of the law than GE's candidates, that does not mean that the Fund's proposed arbitrators all had equal experience.  In fact, the Court specifically recognized that Arbitrator Brand is in a class of his own when it wrote that:

> The Fund's third candidate - Brand- has arbitrated 20 claims for partial withdrawal liability and 25 claims involving the BCI Exemption.  GE is free

to choose Brand to serve as the arbitrator in this case if it does not feel that Clarke and McNeill have enough experience.

(*Id.* at 13).  Arbitrator Brand has been a full-time arbitrator since 1983, is a member of the American Arbitration Association's MPPAA withdrawal liability panel, has arbitrated and mediated almost 4,000 labor, employment, pension and other cases, including approximately 80 withdrawal liability cases (of which around 20 involved claims for partial withdrawal liability, 25 the BCI exemption, and 2/3 actuarial issues).  (*Id.* at 7).

Given his breadth of experience, Arbitrator Brand is uniquely suited to hear this significant partial withdrawal liability case.  While GE attempts to discredit Arbitrator Brand because he did not provide the parties with copies of his awards from his other cases, this Court previously found that argument to be "meritless," pointing out that nothing in the PBGC regulations requires arbitrators to disclose prior awards to third parties.  (*Id.* at 16).  Likewise, although GE claims that Arbitrator Brand is somehow "too busy" to hear this matter, Arbitrator Brand has indicated that he can do so.  The fact that he is busy and in high demand, if anything, speaks more in favor of his selection than against it.  Either way, the Fund is confident that Arbitrator Brand can fit this matter into his schedule, especially given that the parties will be filing cross-motions on the preliminary statutory interpretation questions shortly after the Court's appointment.

Similarly, GE's claim that it alone gets to choose the arbitrator holds no water.  The opportunity to mutually select an arbitrator is over, as GE first refused to consider any arbitrators other than the former federal judges it proposed (and contacted *ex parte*).  While GE complains that it will be effectively shut out of the process unless arbitrator Clarke is selected, GE is only in this position because it unreasonably insisted on proposing three retired judges with no significant experience in this area of the law.  Then, after the Court's Order, GE unreasonably insisted that it alone was entitled to select the arbitrator.  GE's refusal to work with the Fund throughout this process shows that GE was never interested in "mutually" selecting the

6

arbitrator.  Therefore, the Court may now exercise its discretion and judgment in selecting the

arbitrator.  In doing so, the Fund respectfully requests that the Court select the individual with by

far the most experience in this complicated area of the law:  Norman Brand.

## **CONCLUSION**

In accordance with this Court's Order, the Fund respectfully requests that the Court

select Norman Brand, the individual with by far the most withdrawal liability experience on the

Fund's list of arbitrators, to serve as the parties' arbitrator in their underlying $205 million

withdrawal liability dispute.

Respectfully submitted,

TUCKER ARENSBERG, P.C.

*/s/ Neil J. Gregorio*
Neil J. Gregorio, Esquire
Ks. Id. No. 28000
Pa. Id. No. 90895
Richard B. Tucker, III, Esquire
Pa. Id. No. 24961
Mark A. Eck, Esquire
Pa. Id. No. 34613
Scott R. Leah, Esquire
Pa. Id. No. 57564
Kathleen A. Nandan, Esquire
Pa. Id. No. 317060
Brian A. Pepicelli, Esquire
Pa. Id. No. 316605
Ian M. Grecco, Esquire
Pa. Id. No. 324372

1500 One PPG Place
Pittsburgh, Pennsylvania  15222
(412) 566-1212

TADMS:5319585-4 032403-180549

**<u>CERTIFICATE OF SERVICE</u>**

I certify that on May 26, 2020, I electronically filed the foregoing STATUS REPORT ON SELECTION OF ARBITRATOR using the Court's CM/ECF system, which automatically generates notices of electronic filing to all counsel of record at the e-mail addresses on file with the Court.

*/s/ Neil J. Gregorio*
Neil J. Gregorio, Esquire